And that brings us to Savage Services Corporation v. United States of America, case number 21-10745. We'll hear first from Mr. Farmer. Whenever you're ready, Mr. Farmer. Good morning. Can you hear me? Yes. Thank you. Thank you. Jay Farmer for Savage and may it please the court. The United States today is going to ask this court to find that Congress did a complete 180 on law and public policy that's been in place for over 100 years without bothering to say so explicitly. Congress passed the Suits and Amnesty Act 102 years ago as a standalone statute allowing private parties to sue the United States for maritime torts to the same extent as if a private entity was involved. As detailed in their brief, the Supreme Court identified the SAA and similar laws as proof of, quote, that the United States should put aside its sovereign armor in cases where federal employees have tortiously caused personal injury or property damage. It's American Stevedore's case. Now, though, the United States argues that when Congress passed OPA, it stopped its tracks, did a complete 180, and started walking in the opposite direction with no substantive explanation. For the government, this turnaround was accomplished in an immensely indirect way. They argue that Congress signaled its intention by dropping hidden puzzle pieces for courts to find and assemble. Puzzle pieces are as follows. Number one, Congress passed OPA, which qualifies as a detailed remedial scheme under Supreme Court precedent forms. Puzzle piece two, because OPA is a detailed remedial scheme under forms, it preempts the existing patchwork quilt of pre-OPA environmental laws governing maritime oil spills. Puzzle piece number three, although OPA does not explicitly conflict with the SAA, Congress sneakily signaled its intention to preempt the SAA in addition to patchwork quilt by not including in OPA one enumerated offense from one single statute from the predecessor patchwork quilt. Puzzle piece number four, the SAA then becomes the only law with no substantive conflict with OPA to be preempted by OPA. Putting all the puzzle pieces together as the United States wants, the United States regains its sovereign immunity for oil spill claims where its negligence was the cause of that oil spill. In other words, Congress shifted billions of dollars in risk from government for government negligence onto private industry, including my client Savage. It doesn't, I mean, first of all, there does seem to be an express repeal of a provision in the Clean Water Act that provided responsible parties with an additional defense to liability, more specifically if they could prove that the spill was caused solely by negligence on the part of the United and breadth of OPA's scheme and the judicial or the judicial remedies, I guess, that are within it. Why is that not an indication, a pretty clear indication that Congress intended that the government would not be waiving its sovereign liability with respect to just claims that are covered under OPA? That's a great question, Judge, and there's two answers to it. First, the removal of a single defense in a single statute that predates OPA is not evidence of any change in the guard as to contribution claims. A defense is a shield. Contribution claim is a sword. It's mixing swords and shields, apples and oranges. It just can't be done. There's no way to compare them. Secondly, the removal of that defense is reflective of sort of the sea change that happened when OPA was passed. Our brief and the United States brief discusses in length the Exxon Valdez spill. At that point, the United States, well, Exxon dragged its feet. The United States had to go after Exxon, and there were certain defenses available at Exxon. The age of the evidence favored Exxon, but the DOJ finally got around to get after them. But counsel, I'm sorry to interrupt, but I mean, it seems like OPA indicates a policy decision by Congress that, you know, these oil spill problems were not getting cleaned up fast enough, that a lot of damage to the environment was going on, and that usually, though not always, but often, maybe let's just say often, the tankers that were carrying the oil, the owners of the tankers, were responsible in some way for it. Not always, of course, and I understand in your case, your allegation is not at all. But there was a policy judgment by Congress that, in light of the serious problems that these oil spills cause and the need to clean them up as quickly as possible, that what was going to be done was responsible parties were going to be deemed, and then in exchange for deeming the owners the responsible parties, there would be the ability to recoup from other responsible parties, and the government would limit liability by providing its fund, even in cases when the government wasn't responsible at all. And this is part of a trade-off, a policy decision that Congress made. Why, first of all, do you agree that's what happened? And second of all, even if you don't agree, why wouldn't Congress be able to make that judgment? Why wasn't it within Congress's power to do that? Well, first of all, I do disagree with the premise. Although it is within Congress's ballywick to be able to do that, why would they possibly have made this enormous change in 100 years of precedent public policy without even explicitly saying so? To me, that just doesn't make sense, and I can't get over that. And secondly, don't they say, I mean, in addition to what Judge Rosenbaum pointed out, they took this definition of person from all of these extant statues, not just CERCLA, but also the Clean Water Act and the Resource Conservation and Recovery Act, RECRA, all of which included, in addition to all the same entities and individuals that are included in this act, the OPA's definition of person who can be sued, included the United States government. And then they purposefully, it seems, deleted United States government from that definition. Isn't that probative to Judge Rosenbaum's point? That's a good point, Judge. That may be probative. Although the critical mistake the lower court made was actually focusing almost its entire opinion on the definition of person. This is a much broader issue. The savings clause in OPA requires that there be a specific part of OPA that is contradictory. I'm sorry to interrupt, but it never uses the word specific. The Deepwater Horizon Court cited to the conference committee where the conference committee had added the word specific, but the act never uses the word specific. The act only uses the phrase except as provided otherwise in this act, correct? You're exactly right, Judge. I was merely being quick. Except as otherwise provided to me and to the Deepwater Horizon Court, meant there must actually be something that otherwise provides. And when it comes to OPA, nothing otherwise provides on sovereign immunity. OPA's completely silent on sovereign immunity. So the way that Maritime Savings Clause works is it saves anything unless there is actually a conflict. If we're going to read it as only saving issues that OPA doesn't deal with at all, then what's the point of the savings clause at all? If it's not dealt with in OPA, you don't need a savings clause to save anything. It is dealt with though. To Judge Rosenbaum's great deal is dealt with in OPA about how oil cleanup costs are apportioned and how liability is divvied up. And again, OPA to the point of what except as otherwise provided means in this act, except as otherwise provided could very reasonably mean, for example, where we deleted the United States as a party that could be sued as a person under the contribution claim provision. Right? Well, that's what the district court said. But again, I disagree with it. You've seen our reasons as to why we believe that the United States is a person that's well documented in the briefing. However, again, I'm going to go back to that savings clause, the way that OPA works and the way that CERCLA works, as pointed out for Superfunds, you've got initial strict liability and then everything works the same way it has for 100 plus years. We can fight out over whose negligence based on the precepts of contribution. Nothing in OPA says no matter how negligent the government is, it's going to be free from any liability whatsoever. I cited in our brief to a piece of OPA that says you can't bring any cases against federal employees in their private spheres, cases directly against the employees. That provision easily could have said you can't bring any case against the United States, period. But it didn't because of initial strict liability. And then under that maritime savings provision, we can go under the SAA or any maritime law. Can I see my time sticking out? Mr. Farmer, before you sit down, what you're bringing here is a general maritime negligence claim. If we were to find that OPA displaces general maritime claims for the type of claim you raise here, then how is the SAA even relevant? If the OPA displaces general maritime law, then wouldn't we look within the four corners of the OPA to see whether there's a sovereign immunity waiver? Judge, I'm not entirely sure that I can- I'm asking you to assume that we find that the OPA displaces general maritime law. I have a hard time, I guess, with that assumption given the savings clause. I mean- I know you do, but just assume that that's what you were to find. Then does the SAA have any remaining relevance or would we just look to the OPA to determine whether there's a waiver for sovereign immunity purposes? Yes, Judge, there would be remaining relevance because if we're assuming that everything is backed by the contribution provision, that links us to the SAA. It creates a cause of action against a private person. The SAA creates an act against the government to the extent we already have one against a private person, and there it is right there in OPA in the contribution provision. Well, the SAA doesn't actually create a cause of action. It's a sovereign immunity waiver, right? Correct. We need to already have that cause of action, and again, it's right there in contribution in OPA, and because we have it there, the SAA simply extends it to against the government. Thank you. Thank you, counsel, and you've reserved five minutes. Mr. Koppel, we'll hear from you. Good morning, your honors. May it please the court, I'm Josh Koppel on behalf of the United States. The Oil Pollution Act establishes a detailed, comprehensive, and exclusive regime for allocating liability for removal costs and damages resulting from an oil spill. And the act establishes the details of a judicial action to allocate liability, including jurisdiction, venue, statute of limitations, and identifying plaintiffs and defendants. Under the Supreme Court's decision in United States v. Borms, therefore, the court must look only to the Oil Pollution Act to determine whether Congress intended to subject the United States to liability for removal costs in a contribution action. In section 2709. Mr. Koppel, Borms is a little bit different than our case, right? I know you argue that it's on all fours, and it may not matter, but Borms was a case where the FCRA, to Judge Pryor's point, created the cause of action that the plaintiff used in the complaint to advance the plaintiff's claims. And then the plaintiff then reached out to Little Tucker Act for a sovereign immunity waiver, and the Supreme Court says when you've got a comprehensive remedial scheme, you can't mix and match that way. You can't take cause of action here, sovereign immunity waiver there. But Savage doesn't raise, I don't think, an OPA claim here, to Judge Pryor's point. The complaint is admittedly a little unclear about whether it attempts to be an SAA claim, but I think it's probably a common law admiralty claim with a sovereign immunity waiver from the SAA. And so it's not the case, as in Borms, that they're bringing the claim under the subsequent remedial scheme. Does that make a difference at all, that distinction? It doesn't. In Borms, what was relevant was not that the FCRA created the liability, but that the FCRA provided the details of litigation. It provided for jurisdiction, venue, statute of limitations, identified the relevant parties to litigation, and the Oil Pollution Act provides all those details of litigation as well. And what the Supreme Court explained is that where a statute provides the details of litigation, Congress has displaced a more general waiver of sovereign immunity, and any waiver of sovereign immunity for an action under that statute must be found in that statute. Now, I don't think that Savage is a claim or can bring a claim. Certainly, they can't bring a claim under general maritime law. The Oil Pollution Act has displaced general maritime law when it comes to allocating liability for removal costs and damages resulting from an oil spill. I wanted to ask you about that too. That's an interesting point too, because how do you explain then that ExxonMobil versus Baker decision from the Supreme Court in 2008? In that case, there was this punitive damages, common law maritime punitive damages claim that the plaintiffs had brought against the captain and the company became salient later because the jury gave, I don't know, $500 million in punitive damages under that claim. And in the Supreme Court, Exxon said, wait a second, no, the Clean Water Act displaced these common law remedies that you could have had. And in two sentences or so, the Supreme Court says, no, those punitive damages, common law remedies are still available to you. How does that square with what you just said about OPA displacing common law claims? So the Oil Pollution Act displaces common law claims when it comes to the types of damages addressed in the act. So removal costs, economic damages, damages to natural resources, the identified categories of damages in section 2702. Punitive damages are not addressed under the Oil Pollution Act. And so that's why in Exxon, versus Baker, the Supreme Court said that the Oil Pollution Act hadn't displaced general maritime law when it came to punitive damages for an oil spill. But when it comes to removal costs, and that's what we're talking about here, removal costs are quite expressly addressed in the Oil Pollution Act. And in fact, so the Oil Pollution Act creates strict liability for the responsible party. Certainly there's no strict liability under general maritime law. That's a creation of statute. And then the contribution action is a further creation of statute. Once the responsible party is held strictly liable, they can then go after any other person whose negligence may have caused the oil spill. Of course, that's section 2709. Of course, section 2709 limits contribution actions to those against any other person. And the Oil Pollution Act defines person to include private entities, corporate entities, states, and municipalities, but not the United States. So, as Judge Altman pointed out earlier, it is helpful to compare the Oil Pollution Act to CERCLA. CERCLA, like the Oil Pollution Act, has a contribution provision that permits a responsible party to sue any other person who may be liable. But CERCLA's definition of person, unlike OPA's, expressly includes the United States. And that's true, even though CERCLA, like OPA, defines the United States and state together to include not only the 50 states, but also the District of Columbia and the U.S. territories. So, Congress's exclusion of the United States in OPA's definition of person needs to be given effect. As Judge Rosenbaum pointed out earlier, OPA also reflects a balance that Congress struck between internalizing the cost of oil spill within the oil industry, incentivizing the responsible party who's usually in the best position to prevent an oil spill, to take measures to prevent those spills, and on the other hand, OPA provides a limitation of liability where the United States picks up the excess removal costs and damages beyond the statutory limitation of liability, even if the responsible party's negligence was the cause of the oil spill. There's no warrant for the court to disturb that balance that Congress struck by permitting a contribution action against the government that is clearly not contemplated by statute. It's also worth noting, because plaintiffs argue that, you know, that Congress wouldn't have silently made this enormous change in the Oil Pollution Act, it's worth noting that even before the passage of the Oil Pollution Act, the United States was not subject to a contribution action alleging partial liability in causing an oil spill. The only court to have addressed the issue was the Ninth Circuit in Reglacier Bay, and the Ninth Circuit there held that under the Clean Water Act, before the passage of the Oil Pollution Act, a responsible party could recover removal costs only if it established that the sole cause of the spill was the government's negligence. The responsible party couldn't recover by showing that the government's negligence was a partial cause of the oil spill, and there's no doubt that OPA repealed the Clean Water Act's sole governmental negligence defense, but it didn't change. It simply maintained the rule that the What about the, what about Savage's argument that you're reading of the OPA's Savings Clause essentially renders it meaningless? If we're only looking at the overlap between the statute and the common law as a matter of substance, then why would there even be a need for the Savings Clause? The purpose of the Savings Clause is just to make it crystal clear that in OPA-adjacent areas, OPA does not displace general maritime law. So for example, as with regard to punitive damages, or with regard to damages to the barge itself from the collision, which wasn't caused by the oil spill itself, but in this case, but the collision of the barge with the wall of the lock. So, you know, those are kind of adjacent areas that aren't directly addressed by OPA. Those liability for, with regard to those areas, you know, is governed by general maritime law. But when it comes to issues of liability addressed by the Oil Pollution Act, there's really no question that OPA displaces general maritime law. And to be clear, OPA has a lot more to say than just about first-payer liability. So, sure, OPA does say that the responsible party is, in the first instance, liable for removal costs and damages. But the Oil Pollution Act then provides for who is ultimately liable, and it provides for the administrative and judicial mechanisms to reach that ultimate allocation of liability. So the responsible party can file a claim with the Oil Spill Liability Trust Fund if it has defense to liability, or if it has reached the statutory limitation on liability. The Oil Spill Liability Trust Fund, if it has incurred costs, can file an action against the responsible party or against third parties. And of course, the responsible party can file a contribution action against any other person whose negligence might have been a cause of the spill. So in all of these ways, you know, the Oil Pollution Act has a lot to say about getting to that ultimate allocation of liability. And in that regard, the Oil Pollution Act displaces general maritime law. And, you know, to be clear, again, there's no, this type of action wouldn't have occurred prior to the Oil Pollution Act. If Savage really wasn't liable at all, I'm sorry, if Savage was not negligent in causing the oil spill, it wouldn't have any liability, it wouldn't have to file a contribution action against the United States. Whatever person was damaged by the oil spill would have brought the action against the United States alleging the government's negligence. So this scheme, where there's a strictly liable responsible party, that then has to bring a contribution action against an allegedly negligent party, that's really a creation of the Oil Pollution Act. That's not a creation of general maritime law. No, you go ahead. I was gonna ask, how would you articulate the test for displacement that you would want the court to apply here, if you were writing an opinion? General maritime law is displaced in any area that the Oil Pollution Act addresses. So, specifically, with regard to allocating liability for removal costs and the damages specified in Section 2702, the Oil Pollution Act is exclusive. What about the Supreme Court cases that seem to look at more factors like Baker and Batterton, that look at history, whether applying general maritime law would frustrate the statutory scheme, those kinds of things? Well, with regard to the types of damages addressed in Section 2702, and the creation of strict liability, I think it's very clear that applying general maritime law, which operates under a negligence-based regime, as opposed to a strict liability regime, that applying general maritime law would frustrate the goals and the purposes of the Oil Pollution Act. Congress intended OPA to create a strict liability regime to internalize costs of oil spills within the oil industry, to incentivize the responsible parties to take the necessary precautions to prevent oil spills, and then also, of course, to provide a limitation on liability as part of this trade-off with industry. So, the application of the negligence-based regime would very much conflict with that. It doesn't totally internalize costs in the oil industry, though, does it? Because it does allow a responsible party to then sue, obviously, cleanup up front, and then to sue someone who may be liable in contribution, so long as that party isn't the United States, according to you, correct? That's correct. There are exceptions to the that's correct. Section 2709 permits a contribution action against any other person whose negligence may have caused the oil spill. And to Judge Pryor's question, where would you draw that line between Baker and punitive damages that are not displaced, because they're not mentioned in the OPA, and oil removal costs that are displaced because they, well, they are as a person is not mentioned in the OPA? Where would you draw that line? So, with regard to the types of damages, it would be those types of damages specified in Section 2702. I think there's, you know, something like six or seven types of damages that are specified. With regard to those damages, the Oil Pollution Act displaces General Maritime Law. With regard to a contribution action, again, Oil Pollution Act displaces General Maritime Law because OPA contains a provision, Section 2709, that addresses the issue. So, you know, that the Oil Pollution Act creates a cause of action for contribution against any other person necessarily displaces a contribution action that would arise under General Maritime Law. OPA defines the limits of that contribution action. It restricts that action to a cause of action against any other person. And again, person is a statutorily defined term. It does not include the United States. Unless there are further questions, I just want to end by, you know, really pointing out again that any ambiguity has to be resolved in favor of the United States. The United States begins with a presumption of sovereign immunity, and any waiver of that immunity has to be unequivocally expressed in the statute. There's certainly no unequivocal expression of a waiver of sovereign immunity in the Oil Pollution Act. To the contrary, Section 2709 is clear that a contribution action can only be brought against any other person, and person does not include the United States. So unless there are further questions, we ask that the Court affirm the judgment of the District Court. Thank you, Mr. Koppel. Mr. Farmer, you have five minutes. Thank you, Judge. And actually, I want to return to your earlier point. I feel like my answer previous didn't get everything entirely out. On the limits of liability, there's a distinct difference between the limits of liability and OPA and good old Uncle Sam coming in and picking up the tab for Savage after a certain pre-set amount. That money comes from the Oil Spill Liability Fund, which is a collection of taxes from the industry, including Savage, set aside completely separate from the General Fund for this specific purpose. This isn't the United States accepting liability. It's the United States passing a statutory scheme that essentially forces risk pooling and then pulling from that pool when it's necessary. It's very different than the United States accepting liability. Changing course a bit to Judge Altman's comment about... But what makes you think that there's anything in the OPA that would constitute the United States accepting liability outside of payments made by the General Pool Fund? I'm not sure I fully understand the question, Judge. You said the answer to Judge Rosenbaum's question from earlier was that there's a distinction to be made, which you make in your the United States paying a judgment in contribution and the fund, which isn't really a taxpayer money because it's allocated by an insurance pool of sorts from the oil industry. And that's fair. That is a distinction. But what's the significance of the distinction if there's nothing in the OPA that makes clear that the United States is ever willing to pay out of its own taxpayer money except out of the fund? So, again, our point is that the ability to go after the United States doesn't need to be specifically in OPA. It's initial strict liability, which follows by basically everything under the sun under that savings provision. So right there, the entire statutory construction is the answer to your question. Same as CERCLA, initial followed by contribution. And then there's as you pointed out earlier, they're relying their entire argument is based on House of Cards made on forms, which seeks that that argument seeks to limit us to the text of OPA. But the fact of the matter is we're not, because the statutory scheme dealt with in forms was meant to be airtight. And OPA very clearly is not, given the savings clause here in OPA that didn't exist in forms, as well as about the most broad contribution provision allowing savages to literally under any other law as possible. That's evidence that Congress didn't make an airtight statutory scheme. That's evidence of initial strict liability followed by contribution, same as CERCLA. Additionally, as the Deepwater Horizon Court pointed out, OPA was passed to repugnancy looks like under Mississippi tribe. This court's precedent is a Robbins-Drydock rule. Previously, previous to OPA, people and savages, well, under the Robbins-Drydock rule, you needed to have a physical injury to property in order to bring a case. OPA preempts that. Specifically, Section 2702 of OPA allows the collection of lost profits and lost earning capacity. That's what a positive repugnancy looks like. That's what something looks like that is not saved by OPA's savings clause. An actual piece of OPA versus an actual piece of the general maritime law that clearly had a conflict. Congress knows how to make statutory schemes exclusive. It wants to. It very clearly did not here. Contribution provision is as broad as it possibly could be, allowing me to see under any law, and the savings clause requires a, what is it? Whatever the words were, Judge Alton, you are correct. Accept is otherwise provided. Accept is otherwise provided means there has to be something in there. It can't just not be in there, but there's no purpose at all to the savings clause. Anything not in there obviously is already saved, regardless of whether or not the savings clause exists. So once again, Congress knows how to make statutory scheme exclusive and airtight. OPA is not that statute. Initial strict liability yields to savage right to bring contribution claim against the United States. We respectfully request the prior ruling be overturned. Thank you. Thank you, counsel. Thank you both. We have your case.